IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UTHE TECHNOLOGY CORP., | No. C 95-02377 WHA |
| Plaintiff, | |
| v. | **ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS** |
| AETRIUM, INC. and HARRY ALLEN, | |
| Defendants. | |

**INTRODUCTION**

In this securities fraud dispute, defendants move to dismiss claims one through six and eight pursuant to the law of case doctrine and for lack of standing. Defendants move to dismiss claim seven pursuant to FRCP 12(b)(6). For the following reasons defendants' motion is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

Plaintiff Uthe Technology Corporation, a manufacturer and distributor of semiconductor equipment, asserts several claims for relief against defendants Aetrium, Inc., a manufacturer of semiconductor equipment, and its former officer in charge of Asian sales Harry Allen. Plaintiff alleges that defendants participated in a conspiracy to create a new corporation and take over plaintiff's former wholly-owned subsidiary, Uthe Singapore. Uthe Singapore was the Asian distributor of semiconductor equipment for plaintiff and other semiconductor equipment manufacturers, including defendant Aetrium. Plaintiff alleges that defendant Allen lied to

plaintiff by making affirmative and false representations to plaintiff's CEO that he knew nothing of the effort to destroy plaintiff's Asian semiconductor business while simultaneously concealing efforts to destroy plaintiff's Asian semiconductor business. Plaintiff further alleges that defendants used a secret corporation in conjunction with three individuals to take over Uthe Singapore. Plaintiff contends that defendants directly contacted customers and told them to terminate orders and cease payments, participated in theft of customer lists and business plans, interfered with contracts and withheld diverted payments. As a result of defendants' conduct, plaintiff alleges that it was forced to sell its shares in Uthe Singapore at a depressed price. Plaintiff is now seeking redress for fraud by omission, conspiracy to commit fraud, conversion, intentional interference with contract, intentional interference with economic relations, civil RICO, securities fraud and unfair competition arising out of defendants participation in the conspiracy.

     This matter was originally filed against the above-named defendants and three Singapore defendants in state court in 1993, and subsequently removed here on federal question and diversity grounds. The Singapore defendants moved to dismiss the action as to them because the stock-sales agreement governing the claims required that the parties arbitrate any claims relating to the stock sale in Singapore. The two other defendants — Aetrium and Allen — moved to stay the claims against them pending resolution of the arbitration in Singapore. Judge James Ware, then the assigned judge, granted both motions. Plaintiff moved for reconsideration on the grounds that the alleged misconduct occurred prior to and was unrelated to the stock sale and thus not subject to the arbitration clause. Plaintiff also sought leave to amend their complaint. Judge Ware denied plaintiff's motion to reconsider the stay and removal and denied plaintiff's request for leave to amend. Plaintiff pursued the arbitration in Singapore against the Singapore defendants. Plaintiff was successful in the Singapore arbitration and was awarded damages in the amount of $12,286,350. The amount was determined to be the difference between the artificially depressed stock price actually paid for the plaintiff's shares and the true value of the shares absent the effect of the wrongful conduct of defendants.

Upon completion of the Singapore arbitration, plaintiff moved to revive the action against defendants Aetrium and Allen. The action was reassigned to the undersigned judge in May 2012. Plaintiff then moved to file a second amended complaint. Both motions were granted and plaintiff filed a second amended complaint. Defendants now seek to dismiss claims one through six and claim eight pursuant to FRCP 12(b)(1) for lack of standing, claims three and six pursuant to FRCP 12(b)(6) and claim seven as barred by the single recovery rule.

**ANALYSIS**

**1.    LAW OF CASE.**

Defendants Aetrium and Allen contend that claims one through six and eight must be dismissed pursuant to the law of the case doctrine because Judge Ware previously addressed the issue of standing before staying this action. Judge Ware stated plaintiff:

> has no standing to bring the claims which stem from the pre-stock sale conduct. Since these claims allege that Defendants inflicted harm on USTPL [plaintiff's former wholly-owned subsidiary] and not on UTHE directly, UTHE, as a shareholder in USTPL, may not bring these claims in its own right but must sue derivatively on behalf of USTPL. That UTHE may have suffered losses in the form of diminution in value of its stock as the result of the diversion of revenue from USTPL does not entitle it to bring an action in its own name. *Dowling v. Narragansett Capitol Corp.*, 735 F. Supp. 1105, 1113 (D.R.I. 1990). Moreover, UTHE lost standing to sue derivatively when it sold its interests in USTPL. It is well settled that a plaintiff must remain a shareholder at the time of the filing of the action to have standing to maintain a shareholder derivative suit. *Berni v. Gourmet Restaurants of America*, 838 F.2d 642, 646 (2d Cir. 1988).
>
> Because UTHE lacks standing to assert claims for damage to USTPL occurring before the stock sale, UHTE's only cognizable claims arise out of the stock sale agreement . . . .

(Br. Exh. K). Defendants argue the law of case doctrine applies and all claims for damages occurring prior to the sale of stock should be dismissed. This order disagrees.

Under the "law of the case" doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993) The doctrine is not a limitation on a tribunal's power, but rather a guide to discretion. *Arizona v. California*, 460 U.S. 605, 618 (1983).

3

Judge Ware's order found plaintiff lacked standing to assert claims for damage to its subsidiary occurring before the stock sale because plaintiff's standing to maintain a derivative suit was destroyed when plaintiff was divested of its shares. In its second amended complaint, however, plaintiff alleges that it has suffered *direct* harm as a result of defendants' actions, namely direct loss of its own primary revenue stream, customers, confidential documents about clients and company strategy and harm to its own business reputation. Judge Ware's order did not make a decision regarding plaintiff's standing to assert claims of direct harm. It was limited to the issue of standing to sue derivatively. As such, the law of case doctrine does not apply to plaintiff's claims of direct harm.

### 2. STANDING.

Apart from law of the case, the motion contends that plaintiff lacks standing to allege claims one through six and claim eight because the harm alleged in the second amended complaint is incidental to and dependent on the injury to plaintiff's subsidiary. Specifically, defendants argue a shareholder does not have standing to redress an injury to the corporation. To have standing to maintain an action, a shareholder must assert more than personal economic injury resulting from a wrong to the corporation. A shareholder must be injured directly and independently of the corporation. *Shell Petroleum, N.V. Inc. v. Graves*, 709 F.2d 593 (9th Cir. 1983). While defendants' statement of law is accurate, defendants' framing of the harm alleged in the complaint as incidental is inaccurate.

At the pleading stage, all material allegations of the complaint are taken as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 340 (9th Cir. 1996). Plaintiff alleges in the operative complaint that:

> As a direct, proximate and foreseeable result of AETRIUM and ALLEN's fraudulent omission and concealment of their effort to destroy UTHE's Singapore subsidiary and business, UTHE was damaged by the direct loss of a primary revenue stream and clients' business worth millions of dollars, as well as in the loss of confidential documents and information concerning its Singapore clients, operations and business strategy, which harmed its ability to do future business in Singapore. (Second Amd. Compl. ¶¶ 33, 40).

\*     \*     \*

> As a result of UTHE's actions, money that was due to UTHE was diverted to and retained by AETRIUM and ALLEN and their co-conspirators. UTHE was thereby damaged in the amount of the revenue that was wrongfully taken and diverted from it, in the amount of millions of dollars (Second Amd. Compl. ¶ 44).

\* \* \*

> As a direct, proximate and foreseeable result of the actions of AETRIUM and ALLEN, UTHE SINGAPORE was no longer able to fulfill its contractual duties to Uthe and the contract between UTHE and UTHE SINGAPORE was disrupted. UTHE suffered millions of dollars of damages in the loss of a primary revenue stream and permanent harm to long-standing relationships with Asian customers (Second Amd. Compl.¶ 48).

\* \* \*

> As a direct, proximate and foreseeable result of the actions of AETRIUM and ALLEN, UTHE's relationships with its customers were destroyed and its reputation was damaged (Second Amd. Compl. ¶ 53).

\* \* \*

> As a direct, proximate and foreseeable result of the fraudulent communications described above, UTHE was damaged in the direct loss of its customers, contracts and orders for semiconductor business in Asia (Second Amd. Compl. ¶ 66).

\* \* \*

> As a result of AETRIUM's and ALLEN's violation of Business & Professions Code § 17200, *et seq*., UTHE has suffered an actual injury, including direct injury to its business operations in California, amounting to millions of dollars (Second Amd. Compl. ¶ 81).

These allegations plainly state plaintiff suffered harm directly and independently of its subsidiary as a result of defendants' actions. Accordingly, these allegations of direct harm are sufficient to give rise to an inference plaintiff suffered direct, not incidental, harm.

Defendants contend that "the court is not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–1296 (9th Cir. 1998). Defendants argue that the arbitration awards appended to the second amended complaint as exhibits clearly establish that the harm plaintiff is alleging is incidental and dependent upon the harm suffered by the subsidiary. In an effort to bolster their argument, defendants made reference at oral argument to a case from our court of

5

appeals in which the plaintiff's allegations in the complaint were found to be contradicted by the appended arbitration award, resulting in the dismissal of the plaintiff's claims. *See Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001). *Sprewell*, is an accurate framing of the law, however, it is distinguishable from the facts in this action. In *Sprewell* the plaintiff's claims required a finding of racial bias and the appended arbitration award expressly found the defendant did not act with racial bias. Here, unlike *Sprewell*, the arbitration awards do not explicitly state plaintiff did not suffer harm. The arbitration awards detail harm suffered by the subsidiary. Specifically, the arbitration awards show that the subsidiary suffered harm in the form of loss of documents, revenue, employees, customers, contracts and orders (Second Amd. Compl. Exh. A ¶¶ 28, 33, 35, 38, 41, 112). The appended arbitration awards, however, do not automatically preclude the possibility that plaintiff suffered direct harm not discussed in the arbitration awards. Without more facts, it is premature to rely upon the arbitration awards to determine that plaintiff has not suffered direct harm and therefore lacks standing. The Court will be most disappointed if, as the facts unfold, it turns out that plaintiff is trying to pass off damage to the subsidiary as damage to itself. Accordingly, defendants' motion to dismiss claims one through six and claim eight for lack of standing is **DENIED**.

### 3. SECURITIES FRAUD.

Claim seven alleges that defendants engaged in securities fraud pursuant to Section 10(b) of the Securities and Exchange Act. Defendants contend claim seven is barred by the single recovery rule and collateral estoppel because as a result of the Singapore arbitration plaintiff was already awarded the difference between the artificially depressed stock price and the true value of the shares absent the effect of wrongful conduct. Plaintiff concedes that it is not entitled to double recovery for damages awarded pursuant to the Singapore arbitration. Plaintiff argues under the law of this circuit it is also entitled to additional damages — consequential damages that can be proven with reasonable certainty to have resulted from fraud. *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1413 (9th Cir. 1987). Plaintiff, however, has failed to make any reference to consequential damages in its second amended complaint. FRCP 9(g) requires that if an item of special damage is claimed, it must be specifically stated.

6

1  Because plaintiff has failed to seek consequential damages in the second amended complaint
2  it cannot use consequential damages as an avenue for avoiding preclusion. Furthermore,
3  defendants contend plaintiff cannot assert a claim under 10(b) because plaintiff's sale of its
4  subsidiary's shares was not a domestic transaction. This order need not make a determination
5  on defendants' contention because plaintiff has conceded it is not entitled to double recovery
6  and has failed to plead special damages. As such, defendants' motion to dismiss claim seven
7  is **GRANTED.**

### 4. CONVERSION.

Plaintiff's third claim is for conversion. "The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property right; and damages." *Oakdale Village Group v. Fong*, 43 Cal. App. 4th 539, 543–544 (1996). Defendants contend plaintiff's claim fails as a matter of law because plaintiff has not alleged conversion of any tangible property to which it was entitled immediate possession at the time of the alleged conversion. Defendants further allege that plaintiff has failed to properly identify a specific sum of money required for an actionable claim of monetary conversion. This order disagrees.

Plaintiff alleges that it had a contractual right to receive payment of amounts certain under its distribution contracts with its subsidiary. Plaintiff further alleges that defendants had plaintiff's customers cancel orders and withhold or redirect payments already due to plaintiff for plaintiff's own products, not the subsidiary's products. Plaintiff's allegations are sufficient to create a reasonable inference of plaintiff's right to possess an identifiable sum of money. Accordingly defendants' motion to dismiss claim three is **DENIED.**

### 5. RICO.

Defendants argue that plaintiff cannot meet RICO's pattern or enterprise continuity requirement. The Supreme Court has held that continuity can be demonstrated by proving either "a series of related predicates extending over a substantial period of time" or "past conduct that by its nature projects into the future with a threat of repetition." *H.J., Inc. v. NW Bell Telephone Co.*, 492 U.S. 229, 241–242 (1989).

United States District Court
For the Northern District of California

7

Since the plaintiff has alleged that the defendants' goal was to destroy plaintiff's subsidiary, based on the pleadings, there was no threat of activity continuing beyond the conclusion of plaintiff's sale of stock in its subsidiary. At issue is whether defendants' actions extended over a substantial period of time. Defendants argue that plaintiff alleged that the scheme lasted six months which, they say, cannot be considered a "substantial period" of time. The Supreme Court has held that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this [continuity] requirement." *Id.* at 242. Our court of appeals, however, has not adopted a bright-line rule as to what constitutes a "substantial period." *Allwaste, Inc. v. Hinson*, 65 F.3d 1523, 1528 (9th Cir. 1995). Accordingly, it cannot be determined at the pleading stage, as a matter of law, that a six-month period does or does not constitute a "substantial period" of time. Defendants' motion to dismiss claim six is **DENIED**.

## CONCLUSION

For the reasons mentioned above, defendants' motion to dismiss is **DENIED** for claims one through six and claim eight. Defendants' motion to dismiss claim seven is **GRANTED**. Plaintiffs may seek leave to amend and will have **21 CALENDAR DAYS** from the date of this order to file a motion, notice on the normal 35-day track, for leave to file an amended complaint in order to further develop their claims. A proposed amended complaint must be appended to the motion and plaintiff must plead their best case. The motion should clearly explain how the amendments to the complaint cure the deficiencies identified herein. Failing a timely motion, the answer will be due **20 CALENDAR DAYS** after the deadline.

**IT IS SO ORDERED.**

Dated: September 27, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8