| | |
|---|---|
| MICHAEL DOCKTERMAN (admitted *pro hac vice*) <br> HEATHER H. HARRISON (admitted *pro hac vice*) <br> EDWARDS WILDMAN PALMER LLP <br> 225 West Wacker Drive, Suite 2800 <br> Chicago, Illinois 60606 <br> Telephone: (312) 201-2000 <br> Facsimile: (312) 201-2155 <br> Email: mdockterman@edwardswildman.com <br> Email: hharrison@edwardswildman.com <br><br> CLINTON J. McCORD (SBN 204749) <br> EDWARDS WILDMAN PALMER LLP <br> 1901 Avenue of the Stars, Suite 1700 <br> Los Angeles, California 90067 <br> Telephone: (310) 860-8700 <br> Facsimile: (310) 860-3800 <br> Email: cmccord@edwardswildman.com <br><br> Attorneys for Plaintiff <br> UTHE TECHNOLOGY CORPORATION | |

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UTHE TECHNOLOGY CORPORATION, <br><br> Plaintiff, <br><br> vs. <br><br> AETRIUM, INC., HARRY ALLEN, *et al.*, <br><br> Defendants. | Case No. 3:95-cv-02377-WHA <br><br> **DECLARATION OF J. MICHAEL GOODSON IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT** |

1

DECLARATION OF J. MICHAEL GOODSON IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT

**DECLARATION**

I, J. Michael Goodson, do hereby declare as follows, which facts are based upon my personal knowledge and to which I could and would competently testify:

1. I am the President and Chief Executive Officer of Plaintiff Uthe Technology Corporation ("Uthe"). I provide this declaration in support of Uthe's opposition to the Defendants' second motion for summary judgment.

2. I provide this declaration to address a single issue, namely, the "Head Office Expenses" payments made by Uthe Singapore to Uthe each year up until the point when I was fraudulently induced into selling Uthe Singapore to the officers of Uthe Singapore, in October 1992.

3. The payments were made by Uthe Singapore to Uthe as compensation for the guidance and services that I provided to Uthe Singapore, specifically its directors and officers, in the conduct of its business. The payments were not made because Uthe was a stockholder of Uthe Singapore. The amount of the payments was unconnected to Uthe's status as a stockholder or the amount of stock held. The payments were income derived from my active involvement in the affairs of Uthe Singapore. In that manner the payments were income, paid in compensation for my work for the company. In other words, they were like a salary.

4. The payments were calculated based on a set formula, namely, 2.5% of the sales of Uthe Singapore. The payments were not dividends. Again, they were not paid because of stock ownership, and would have been paid (according to the set formula), regardless of the amount of stock owned. The payments were not discretionary on the part of Uthe Singapore. Uthe Singapore agreed to make the payments, year in and year out, based on the set formula.

5. The amounts of the Head Offices Expenses payments for the years 1988 through 1992 are accurately reflected in the Uthe Singapore financial statements, specifically the profit and loss summary for years ending June 30, 1989 through 1992, which was produced to Defendants in this case labeled as "Uthe00620" to "Uthe0623."

6. These payments were actually received by Uthe USA.

7. Uthe USA received these payments every year from the incorporation of Uthe

Singapore until the time I was induced into selling the company in 1992. If it were not for the secret conspiracy to divert business away from Uthe Singapore and make the company appear as if it was failing, Uthe would never have sold the company and Uthe would still be receiving the Head Offices Expenses payments.

I swear under the penalty of perjury under the laws of the United States of America that the above statements are true and accurate.

Executed in _Trenton N.J._, this _15_ day of August, 2013.

_____
J. Michael Goodson