DAVID B. POTTER (Pro Hac Vice)
EDWARD M. LAINE (Pro Hac Vice)
ARCHANA NATH (Pro Hac Vice)
OPPENHEIMER WOLFF & DONNELLY LLP
Campbell Mithun Tower – Suite 2000
222 South Ninth Street
Minneapolis, Minnesota 55402-3338
Telephone:    612.607.7000
Facsimile:    612.607.7100
Email: dpotter@oppenheimer.com
       elaine@oppenheimer.com
       anath@oppenheimer.com

ANN E. JOHNSTON (State Bar No. 141252)
COBLENTZ, PATCH, DUFFY & BASS LLP
One Ferry Building, Suite 200
San Francisco, California 94111-4213
Telephone:    415.391.4800
Facsimile:    415.989.1663
Email: ef-aej@cpdb.com

Attorneys for Defendants
HARRY ALLEN AND AETRIUM INCORPORATED

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| UTHE TECHNOLOGY CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>HARRY ALLEN and AETRIUM INCORPORATED,<br><br>Defendants. | Case No. 3:95-cv-02377-WHA<br><br>**ADDITIONAL POINTS AND AUTHORITIES RE: COLLATERAL ESTOPPEL**<br><br>F.R.C.P. Rule 56<br><br>Date:   September 5, 2013<br>Time:   8:00 a.m.<br>Dept.:  Courtroom 8, 19th Floor<br>Judge:  The Honorable William H. Alsup |

Defendants Aetrium Incorporation ("Aetrium") and Harry Allen submit this memorandum of Additional Points and Authorities Regarding Collateral Estoppel pursuant to this Court's Order on Summary Judgment Hearing, dated September 4, 2013.

**ADDITIONAL POINTS AND AUTHORITIES RE: COLLATERAL ESTOPPEL**

# I. NON-MUTUAL COLLATERAL ESTOPPEL

Collateral estoppel, also known as issue preclusion, bars the relitigation of all issues actually decided in a prior proceeding. *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988). The Ninth Circuit extends this preclusive effect to foreign arbitration awards. *Seung Woo Lee v. Imaging3, Inc.*, 283 F. App'x 490, 493 (9th Cir. 2008) ("'An arbitration decision can have res judicata or collateral estoppel effect[.]'") (quoting *C.D. Anderson & Co., v. Lemos*, 832 F.2d 1097, 1100 (9th Cir.1987)); *see also AJU v. AJT* [2011] 4 SLR 739 at 772-74 (Singapore Ct. App.) (holding that under Singapore law, an arbitration award is treated as a final, enforceable judgment).

Collateral estoppel can apply in cases where the parties in the current action and the previous action are not identical (non-mutual collateral estoppel). *Fireman's Fund Ins. Co.*, 258 F.3d 1016, 1020-21 (9th Cir. 2001) (precluding relitigation of RICO claims already litigated in prior criminal action). Non-mutual collateral estoppel applies when:

1. There was a full and fair opportunity to litigate the identical issue in the prior action;
2. The issue was actually litigated in the prior action;
3. The issue was decided in a final judgment; and
4. The party against whom issue preclusion is asserted was a party or in privity with a party to the prior action.

*Syverson v. Int'l Bus. Machines Corp.*, 472 F.3d 1072, 1079 (9th Cir. 2007); *In re DirecTV Early Cancellation Litig.*, 738 F. Supp. 2d 1062, 1079 (C.D. Cal. 2010).

Uthe USA is barred from seeking damages on claims already litigated in the Singapore Arbitration.[1] Uthe USA has already conceded this, stating that it is not entitled to damages it already obtained in the Singapore Arbitration and that it "is ready, willing and able to give full

---

[1] Defendants previously briefed the issue of collateral estoppel (as well as the single recovery rule) in their Motion to Dismiss as a basis to eliminate Uthe USA's claim for damages related to its loss of its subsidiary Uthe Singapore (*See* Defendants Motion to Dismiss, Dkt. Entry 137 at 15-18) and have raised collateral estoppel as an affirmative defense (Answer to Amended Cmplt., Dkt. Entry 146, at 12.)

force, effect and credit to the Singapore arbitration awards." (*See* Uthe USA Opp. to Motion to Dismiss, Dkt. Entry 142, at 21.) While non-mutual collateral estoppel does not apply to issues that merely could have been litigated, as discussed below, all of the damages Uthe USA is presently seeking against Defendants in this case were already fully litigated in the Singapore Arbitration.

## II. UTHE USA'S LOSS DURING THE "DIVERSION PERIOD"

In the Singapore Arbitration, Uthe USA sought damages for its losses relating to Uthe Singapore "contracts and business diverted to United Semiconductor" during the Diversion Period. (Nath Decl. Ex. D (Singapore Damages Award) at ¶ 53; *id.* at ¶¶ 21, 91.) The Singapore arbitrator awarded Uthe USA S$500,000 as a "not conservative[]" calculation of Uthe USA's losses during the Diversion Period. (*Id.* at ¶ 91.)

Uthe USA is now seeking an additional S$12,500 ($7,885) from Defendants, claiming Uthe Singapore would have paid Uthe USA an *additional* 2.5% of that S$500,000 as Head Office Expense Payments if not for the lost contracts and opportunities. (*See* Nath Decl. Ex. B (Hosfield Report) at 6.) But when the Singapore arbitrator was deciding Uthe USA's Diversion Period damages, he was determining the *full* loss to Uthe USA related to the diverted contracts and opportunities before the sale of Uthe Singapore in October 1992. (*See id.* at ¶¶ 53, 91.) The arbitrator found that the S$500,000 award fully compensated Uthe USA for that loss. Thus, the issue of Uthe USA's loss during the Diversion Period relating to lost contracts and opportunities has already been fully and finally litigated in the Singapore Arbitration and Uthe USA is precluded from relitigating that issue of loss now. *See Syverson* 472 F.3d at 1079; *Fireman's Fund Ins. Co.*, 258 F.3d at 1021; *Seung Woo Lee*, 283 F. App'x at 493.

## III. UTHE USA'S LOSS RELATED TO THE FORCED SALE OF UTHE SINGAPORE

Uthe USA received a portion of the net sales and profits of Uthe Singapore each year before the October 1992 sale. Uthe Singapore paid Uthe USA 2.5% of its net revenue as Head Office Expense Payments each year. Uthe Singapore also sent a substantial portion of its "overall profit" up to its parent Uthe USA each year as additional "dividends and emoluments." (Nath Decl. Ex. D (Singapore Damages Award) at ¶ 50; *see* Nath Decl. Ex. I.)

**ADDITIONAL POINTS AND AUTHORITIES RE: COLLATERAL ESTOPPEL**

In the Singapore Arbitration, Uthe USA sought two alternative types of damages related to the October 1992 forced sale of Uthe Singapore. First, Uthe USA sought the income/revenue stream it would have received from Uthe Singapore in 1993 through 2012 but for the forced sale. (Nath Decl. Ex. D (Singapore Damages Award) at ¶¶ 26, 27, 47(viii), 50.) Alternatively, Uthe USA sought the difference in the but-for value of Uthe Singapore and the actual amount paid at the time of the October 1992 sale. (*Id.* at ¶¶ 19, 27, 92-119.) The arbitrator analyzed both of these alternative damage claims. (*Id.* at ¶ 123; *id.* at ¶¶ 73-64, 86-91, 92-119.)

As to the first type of damage, the arbitrator determined Uthe USA is "entitled to some relief arising from . . . the fact that [Uthe USA] was not able to receive dividends from the lost profits during the time it did not own [Uthe Singapore]." (*Id.* at ¶ 64.) The arbitrator used the actual profits of UST (the successor company after the Singapore Defendants purchased Uthe Singapore in October 1992) to calculate what income/revenue stream Uthe USA would have received from Uthe Singapore had it not sold Uthe Singapore in October 1992. (*Id.* at ¶¶ 69, 86-91.) These UST profits included "all of the profits of UST." (*Id.* at ¶ 90.) Such profits would have necessarily included any amounts that before the sale (when UST was still Uthe Singapore) would have been sent to Uthe USA as "Head Office Expense Payments" because, after the sale, UST was a standalone company with no parent to which it would have made Head Office Expense Payments. Based on this analysis, the arbitrator determined that Uthe USA's lost income/revenue stream after the October 1992 sale was not "much more than [S]$10 million." (*Id.* at ¶ 91.)

The arbitrator then analyzed Uthe USA's alternative damage claim relating to the forced sale of Uthe Singapore, calculating the value of Uthe Singapore but for the misconduct. (*Id.* at ¶¶ 92-119.) The arbitrator determined Uthe USA would have received S$14.580 million if it had sold Uthe Singapore in an arms-length transaction. (*Id.* at ¶¶ 118-119.) Since Uthe USA was paid only S$2.294 million by the Singapore Defendants, the arbitrator determined Uthe USA was entitled to S$12.286 for its losses related to the forced sale. (*Id.*)

After analyzing both Uthe USA's entitlement to damages for lost income/revenue stream from Uthe Singapore after the October 1992 sale (UST profits), and Uthe USA's entitlement to damages for losses on the October 1992 sale (but-for value of the sale), the arbitrator determined

3  3:95-cv-02377-WHA
**ADDITIONAL POINTS AND AUTHORITIES RE: COLLATERAL ESTOPPEL**

that Uthe USA is not entitled to both types of damages as compensation for Uthe USA's loss relating to the forced sale of Uthe Singapore. (*Id.* at ¶ 123.) The arbitrator found that awarding *either* of the two claimed damages would result in making Uthe USA "whole," while awarding *both* would be both damages would be "unwholesome." (*Id.* at ¶ 124.) As the arbitrator concluded, Uthe USA can recover either the value for its loss on the sale of its subsidiary Uthe Singapore or the value of its loss of the future profits/payments it would have received from Uthe Singapore, but not both. (*Id.* at ¶ 123-24.) As a result, the arbitrator awarded Uthe USA S$12.286 million in damages related to Uthe USA's loss of its subsidiary Uthe Singapore. (*Id.* at ¶ 126.)

Thus, the Singapore Arbitration fully litigated Uthe USA's entitlement to future profits/payments it would have received from Uthe Singapore but for the October 1992 sale. The arbitrator held that Uthe USA is *not* entitled to such damages because he had fully compensated Uthe USA for its loss by awarding Uthe USA the but-for value of the sale.

## IV. PREJUDGMENT INTEREST

In the Singapore Arbitration, Uthe USA expressly sought prejudgment interest on its damages and set forth supporting arguments. (*Id.* at ¶¶ 18-19, 128, 131.) The parties litigated and the arbitrator decided it was proper to award prejudgment interest to Uthe USA. (*Id.* at ¶¶ 127-37.) Uthe USA sought a 5.33% interest rate, which was the rate Singapore Courts used. (*Id.* at ¶¶ 128-29.) But in a reasoned analysis, the arbitrator concluded that Uthe USA was entitled to interest at a 1.5% per annum rate (the average deposit rate since 2003). (*Id.* at ¶¶ 128-30.) The arbitrator awarded Uthe USA such prejudgment interest on all damages awarded to Uthe USA, which included both the S$500,000 damage award for Uthe USA's losses during the Diversion Period and the S$12.286 million damage award for Uthe USA's losses related to the forced sale of Uthe Singapore in October 1992. (*Id.* at pg. 86, Award and Order (a) and (b).) Because the issue of prejudgment interest on Uthe USA's damage claims was fully litigated in the Singapore Arbitration, Uthe USA is precluded from relitigating that issue now (and is certainly estopped from claiming it is entitled to an *additional, higher* interest rate on those damage awards).

**ADDITIONAL POINTS AND AUTHORITIES RE: COLLATERAL ESTOPPEL**

Dated: September 5, 2013          OPPENHEIMER WOLFF & DONNELLY LLP

By:     s/ Archana Nath
        Archana Nath

**Attorneys for Defendants HARRY ALLEN AND AETRIUM INCORPORATED**