IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UTHE TECHNOLOGY CORPORATION,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>HARRY ALLEN and AETRIUM INCORPORATED,<br><br>　　　　Defendants.<br>　　　　　　　　　　　　　　　　　　/ | No. C 95-02377 WHA<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

In this long ago-filed action concerning an alleged conspiracy to take over plaintiff's foreign subsidiary, defendants have filed a second motion for summary judgment on plaintiff's (1) claim for damages, (2) claim under the Racketeer Influenced and Corrupt Organizations Act, and (3) claim for prejudgment interest. For the following reasons, defendants' motion is **GRANTED.**

## STATEMENT

The parties' allegations and this action's procedural history are set forth in two prior orders (Dkt. Nos. 144 and 164). In brief, plaintiff Uthe Technology Corporation, a manufacturer and distributor of semiconductor equipment, asserts several claims for relief against defendant Aetrium, Inc., a manufacturer of semiconductor equipment, and its former officer in charge of Asian sales Harry Allen.

The complaint alleges that defendants conspired to create a new corporation and take over plaintiff's former wholly-owned subsidiary, Uthe Singapore. This subsidiary was the Asian distributor of semiconductor equipment for plaintiff and other semiconductor equipment manufacturers, including defendant Aetrium. As a result of defendants' conspiracy, plaintiff claims that it sold Uthe Singapore at a depressed price in October 1992.

In July 1993, plaintiff sued the above-named defendants and three Singapore defendants in state court. The matter was later removed on federal question and diversity grounds, and assigned to our Judge James Ware. The Singapore defendants moved to dismiss the action as to them because the stock-sale agreement governing the claims against them required that the parties arbitrate any claims relating to the stock sales in Singapore. The two remaining defendants — Aetrium and Allen — moved to stay the claims against them pending resolution of the Singapore arbitration. In December 1993, Judge Ware granted both motions.

Then — for the next nineteen years — plaintiff pursued the Singapore arbitration against the Singapore defendants. One reason for why the Singapore arbitration took so long was that the initial arbitrator had to be replaced after resigning due to poor health (Nath. Exh. D at 3–4). Additionally, the Singapore arbitration took place in two lengthy phases: the liability phase (which ended in June 2005) and the assessment phase (which concluded in March 2012).

It is at the end of this second phase that plaintiff received a vast sum of money for its arbitration award, comprising: (1) $12,286,350 in Singapore dollars for the difference between the artificially depressed stock price actually paid for plaintiff's shares and the true value of the shares absent the effect of defendants' wrongful conduct, and (2) $500,000 in Singapore dollars for the value of diverted contracts and opportunities (*id.* at 86). Of note, the arbitrator awarded the $12,286,350 amount after calculating damages for both the difference in Uthe Singapore's value in October 1992 and the amount for plaintiff's lost profits, dividends, and emoluments (*id.* at 62, 75). The arbitrator concluded that plaintiff would be unjustly enriched if plaintiff received both amounts as sought, and thus awarded plaintiff only the *greater* of the two calculations (*i.e.*, the $12,286,350 amount) (*id.* at 78–80, 86). Furthermore, both the $12,286,350 and the $500,000 amounts were awarded with yearly 1.5% interest beginning from January 1, 2003, until

2

the date of the award (*id.* at 62, 86). Plaintiff's expert has estimated that the total amount of the Singapore arbitration award in USD is $9,180,771 (McCord Exh. B at 27).

In May 2012, the undersigned judge inherited this matter after plaintiff revived this action against defendants Aetrium and Allen. Plaintiff then filed a second amended complaint, alleging that it suffered direct harm from defendants' actions in the form of lost documents, revenue, employees, customers, contracts, and orders (Second Amd. Compl. Exh. A ¶¶ 28, 33, 35, 38, 41, 112). Defendants moved for summary judgment on the grounds that plaintiff lacked evidence of standing to assert its claims. The standing motion was denied after plaintiff submitted some evidence that it suffered direct harm in the form of reputational damage and lost sales to its own customers (Dkt. No. 164).

Defendants have now filed a second, comprehensive motion for summary judgment as to plaintiff's claims concerning damages, RICO, and prejudgment interest. Of note, plaintiff no longer claims damages for profits relating to lost sales (allegedly because it was unable to gather sufficient documentation to quantify such profits) (Opp. 14). Plaintiff instead seeks damages in three forms: (1) lost "Head Office Expense Payments"; (2) treble damages under RICO, based on both the Singapore arbitration award and head office expense payments; and (3) prejudgment interest on both the Singapore arbitration and head office expense payments (McCord Exh. B at 5). This order follows full briefing and oral argument on the motion, as well as supplemental authorities requested for hearing.

**ANALYSIS**

Summary judgment is granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FRCP 56(c). Viewing the evidence in the light most favorable to the non-moving party, a district court determines whether there is any genuine issue of material fact. *Aronsen v. Crown Zellerbach*, 662 F.2d 584, 591 (9th Cir. 1981) (internal quotations omitted). Facts are material if they affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Issues as to a material fact are genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Ibid.*

3

1    The party moving for summary judgment bears the initial burden of identifying those
2 portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine
3 issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving
4 party has met its initial burden, the nonmoving party must produce admissible evidence that sets
5 forth specific facts showing a genuine issue for trial. *Celotex*, 477 U.S. at 323. If the nonmoving
6 party fails to satisfy its burden, the moving party prevails on summary judgment. *Nissan Fire &*
7 *Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).

### 1. DAMAGES FOR HEAD OFFICE EXPENSE PAYMENTS.

Plaintiff seeks damages for lost head office expense payments in two ways. *First*, plaintiff asserts that it should receive damages for head office expense payments that would have been associated with diverted contracts and opportunities prior to the October 1992 sale. *Second*, plaintiff contends that it should be awarded damages for head office expense payments that Uthe Singapore would have paid to plaintiff had the October 1992 sale not occurred. Plaintiff further argues that such payments are not profits relating to any lost sales of its products, but are compensation that Uthe Singapore would pay plaintiff each year for the executive services of plaintiff's CEO.

Here this order pauses to note that plaintiff's opposition brief is critically vague and leaves the impression that the only item of damage being asserted is the head office expense payments (Opp. 14). A court should be entitled to rely on brief of counsel as opposed to other aspects of the record in determining the issues at hand. Nonetheless, plaintiff's expert report goes beyond the head office expense payments asserted in the opposition brief, and arguably discusses other damages concerning RICO and prejudgment interest (McCord Exh. B at 5–8). The order will now address all three types of damages claimed by plaintiff's expert.

As to the head office expense payments claim, there is insufficient proof that Uthe Singapore was legally obligated to make such payments to plaintiff. Plaintiff was ordered to "specify the precise legal basis for the alleged Head Office Expense Payments" and to "bring the contracts, bylaws, or other legal documentation concerning these payments to the hearing" (Dkt. No. 189). At oral argument, plaintiff conceded that there was no such written contract or other

4

documentation between Uthe Singapore and plaintiff, but nevertheless points to Uthe Singapore's profit and loss statement as evidence of head office expense payments (Nath. Exh. I at Uthe00623). In fact, the statement lists one line for "Head Office Expense" amounts from 1990 to 1992, with no mention of Uthe Singapore being legally required to pay these amounts to plaintiff before or after the October 1992 sale (*ibid.*). Plaintiff also relies on a Singapore defendant's declaration to show that Uthe Singapore paid head office expense payments to plaintiff, but again, this declaration fails to demonstrate any existence of an agreement that Uthe Singapore would make such payments (Nath Exh. E at Uthe07772). Finally, plaintiff submits its CEO's declaration as evidence of Uthe Sinagpore's oral agreement to make head office expense payments, but this declaration merely states how these payments would be calculated and how plaintiff would still somehow receive such payments in the absence of the October 1992 sale (Goodson Decl. ¶¶ 3, 4, 7). The closest that this declaration gets is stating that "Uthe Singapore agreed to make the payments, year in and year out, based on the set formula," but there is no reference to an agreement — oral or written — under which Uthe Singapore would be legally required to pay or continue paying head office expense payments even after the subsidiary's sale (*id.* ¶ 4).

Absent sufficient evidence of Uthe Singapore's legal obligation to pay head office expense payments to plaintiff, the summary judgment record fails to provide a basis on which plaintiff could recover such payments as damages. Accordingly, the foregoing is dispositive and there is no need to reach defendants' arguments concerning standing or the amount and receipt of the head office expense payments. Summary judgment as to plaintiff's claim for these payments is therefore **GRANTED.**

### 2. DAMAGES UNDER RICO.

Plaintiff also contends that it should receive treble damages under RICO for both the Singapore arbitration award and lost head office expense payments. As discussed above, there is no evidence on which plaintiff can collect head office expense payments as damages. As such, the order focuses on the issue of treble damages based on the Singapore arbitration award alone.

Under California law, "[a]n injured person is entitled to only one satisfaction of judgment for a single harm, and full payment of a judgment by one tortfeasor discharges all others who may be liable for the same injury." *Fletcher v. California Portland Cement Co.*, 99 Cal. App. 3d 97, 99–100 (1979). This rule prevents double recovery, and "applies whether a single judgment has been obtained against joint or concurrent tortfeasors, whether separate judgments of equivalent or disparate amounts have been obtained against tortfeasors, or whether no other judgment has been obtained against other tortfeasors." *Ibid.*

In *Fletcher*, a plaintiff filed a personal injury action in federal district court, alleging that two defendants concurrently caused his injuries. *Id.* at 98–99. A month later, the plaintiff filed a second action for the same injury in state court. *Id.* at 99. After the federal district court dismissed the second defendant for lack of jurisdiction, the plaintiff proceeded with his federal action against the first defendant and obtained a jury verdict of $75,625 for damages. *Ibid.* The jury calculated this amount after finding that $137,500 would compensate the plaintiff for his injuries, and that plaintiff's own negligence had contributed to 45% of those injuries. *Ibid.* When the plaintiff's second action came to trial, the state court dismissed the action against the second defendant because the first defendant had already paid the federal judgment in full. *Ibid.*

Defendants assert — and plaintiff agrees — that the Singapore award has already been paid in full. The Singapore arbitrator had calculated plaintiff's damages for both the difference in Uthe Singapore's value in October 1992 and the amount of lost profits, dividends, and emoluments (Nath Exh. D. at 62, 75). He then awarded plaintiff the greater of these two calculations after concluding that plaintiff would be unjustly enriched if it also recovered lost profits, dividends, and emoluments (*id.* at 78–80, 86). Plaintiff now seeks even more beyond the vast sum of money that was awarded in Singapore and which has already been paid.

The only plausible justification that plaintiff can attempt is that even if the Singapore arbitration award has been paid, plaintiff has only been fully compensated once and not three times under RICO. Our court of appeals has not addressed this issue, but there are two ways to proceed. On the one hand, it could be argued that the one-satisfaction rule diminishes a claim at least to the extent that the payment has been made. *See, e.g.*, *In re National Mortg. Equity Corp.*

6

*Mortg. Pool*, 636 F. Supp. 1138, 1151 (C.D. Cal. 1986) (Judge Wallace Tashima). As such, the Singapore arbitration award should constitute compensation for only one-third of the treble damages under RICO, with the remaining two-thirds of the treble damages unaffected by the one-satisfaction rule. *Id.* at 1151–52. On the other hand, if the item on which the treble damages are calculated no longer exists (because the item has already been paid for fully), then there are no items remaining to be compensated by reason of any RICO violation, and zero multiplied by three is still zero.

Here, it is clear that plaintiff has been compensated fully for the Singapore arbitration award. Although arbitration consumed almost two decades of this dispute, plaintiff bargained for such a remedy that in turn led to a complete recovery, leaving no point in continuing the litigation against the remaining defendants in this action. No one forced plaintiff, a sophisticated business entity, to agree to the Singapore arbitration or to the arbitration agreement. To the contrary, plaintiff instituted and voluntarily consented to the Singapore arbitration, where it had the opportunity to present and recover full damages and where it did in fact recover a remarkably huge sum that has already been paid in full (approximately $9,180,771 USD in plaintiff's estimate) (Dkt. No. 107 at 2; Nath Exh. D at 3, 27; McCord Exh. B at 27). As such, plaintiff cannot now pretend to have been denied its day in court or pretend to need a second run at recovery on the theory that it is entitled to treble damages under RICO, more than twenty years after the fact. The undersigned judge therefore respectfully disagrees with his good friend and colleague Wallace Tashima (who was then sitting as a district court judge), and now rules that there are no more damages for which plaintiff may be compensated under RICO.

At this time, it is unnecessary to reach the parties' arguments regarding continuity, as summary judgment on plaintiff's RICO claim is **GRANTED.**

### 3. PREJUDGMENT INTEREST.

Plaintiff further argues that it should receive damages for prejudgment interest on both the Singapore arbitration award and head office expense payments, based on California's (much higher) statutory interest rate for fraud.

7

The order disagrees for two reasons. *First*, as to the Singapore arbitration award, "full payment of a judgment by one tortfeasor discharges all others who may be liable for the same injury." *Fletcher*, 99 Cal. App. 3d at 99. Plaintiff already received prejudgment interest from the Singapore arbitration award, but nevertheless asks for *additional* prejudgment interest based on that same award. As such, *Fletcher* bars plaintiff from doing so. *Second*, the summary judgment record fails to provide evidence on which plaintiff may claim head office expense payments as part of its damages, as discussed above. Accordingly, plaintiff cannot seek prejudgment interest on this basis either.

Even if there were sufficient evidence of Uthe Singapore's legal obligation to pay head office expense payments, however, California law requires that prejudgment interest in non-contractual actions be limited to ascertainable damages. *See Steinfeld v. Foote-Goldman Proctologic Med. Grp., Inc.*, 60 Cal. App. 4th 13, 21 (1997); Cal. Civil Code §§ 3287(a), 3288. Plaintiff suggests that there is no such requirement of ascertainability, but fails to cite cases that support its suggestion or otherwise address *Steinfeld*. 60 Cal. App. 4th at 21. Because the parties dispute the head office expense payment amounts — based on whether those payments represent lost compensation or profit — plaintiff cannot recover prejudgment interest on those payments as a matter of law.

Summary judgment on plaintiff's claim for prejudgment interest is thus **GRANTED.**

## CONCLUSION

For the reasons stated, defendants' motion for summary judgment is **GRANTED.** It is unnecessary to address plaintiff's objection to defendants' exhibits in support of their reply brief, as the order does not rely on those exhibits. Counsel shall agree upon and file a form of final judgment by **NOON ON SEPTEMBER 12,** reserving all rights to the substance thereof.

**IT IS SO ORDERED.**

Dated: September 9, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8