**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UTHE TECHNOLOGY CORP, | No. C 95-02377 WHA |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| HARRY ALLEN and AETRIUM INCORPORATED, | |
| Defendants. | |

## INTRODUCTION

In this action alleging a conspiracy to siphon business from a foreign distributor of semiconductor equipment, defendants renew their motion for summary judgment following remand. For the reasons stated below, defendants' motion is **DENIED**.

## STATEMENT

Plaintiff Uthe Technology Corporation, a manufacturer and distributor of semiconductor equipment, claims that defendants Aetrium, Inc., a manufacturer of semiconductor equipment, and its former officer in charge of Asian sales Harry Allen participated in a conspiracy in order to divert business away from our plaintiff's wholly-owned subsidiary, Uthe Technology Singapore Private, Ltd. Uthe Singapore was the Asian distributor of semiconductor equipment for our plaintiff and other semiconductor equipment manufacturers, including defendant Aetrium.

In July 1992, defendants participated in a conference call with several officers of Uthe Singapore to discuss a plan to divert business and income away from Uthe Singapore. The conspirators agreed to withhold commissions due to Uthe Singapore pursuant to its distribution agreement with Aetrium, to encourage customers to transact with Aetrium directly, to covertly amend the terms of Aetrium's agreement with Uthe Singapore so it could terminate the agreement on short notice, and to conceal this conduct from plaintiff and its principal. The conspirators also set up a secret shell corporation to fulfill orders for semiconductor equipment made to Uthe Singapore that the conspirators diverted. The scheme was carried out over numerous phone calls and dozens of faxes (Yip. Decl. ¶¶ 4, 7–9).

This matter was originally filed against the above-named defendants and the officers of Uthe Singapore in state court in 1993. It was subsequently removed here on federal question and diversity grounds. The Singapore defendants moved to dismiss the action as to them because the agreement governing their acquisition of Uthe Singapore, which governed plaintiff's claims against them required the parties to arbitrate any claims relating to the sale in Singapore. The remaining defendants — Aetrium and Allen — moved to stay the case pending resolution of the arbitration in Singapore. Judge James Ware, then the assigned judge, granted both motions.

Plaintiff pursued the arbitration in Singapore and, nineteen years later, received damages in excess of nine million U.S. dollars, which represented the difference between the true value of the shares in Uthe Singapore absent defendants' conduct and the artificially depressed stock price actually paid (Nath Decl., Exh D at 75, 86).

In May 2012, the action was reassigned to the undersigned judge. Plaintiff moved to lift the stay and to file a second amended complaint, which motions were granted. Defendants moved for summary judgment arguing that Uthe could not establish that it suffered an injury in fact sufficient to confer standing, which motion was denied. Defendants again moved for summary judgment, arguing, inter alia, that Uthe was not entitled to treble damages under the Racketeer Influenced and Corrupt Organizations Act, inasmuch as the Singapore arbitration award had already been paid in full, and plaintiff could not seek damages for a claim that had

already been paid in full. Defendants' motion was granted and judgment was entered in their favor.

Plaintiff appealed, and the court of appeals reversed, holding that plaintiff "is not barred by the one satisfaction rule from pursuing treble damages under RICO against the Defendants, provided there is an offset paid to Uthe by the Foreign Defendants as a result of the arbitral award." *Uthe Technology Corp. v. Aetrium, Inc.*, 808 F.3d 755 (9th Cir. 2015). The case was remanded for further proceedings.

Defendants have renewed their motion for summary judgment solely on the theory that Uthe has failed to establish continuity under RICO. This order follows full briefing and oral argument as well as supplemental briefing submitted after the case returned on remand.

**ANALYSIS**

Under the Racketeer Influenced and Corrupt Organizations Act RICO, a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Brady v. Dairy Fresh Products Co.*, 974 F.2d 1149, 1152 (9th Cir. 1992). To establish a "pattern" under RICO, a plaintiff must demonstrate that the predicate acts that give rise to the claim constituted a threat of continuing racketeering activity. *H.J. Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229, 240 (1989). Defendants' only argument in their renewed motion for summary judgment is that Uthe has failed to present evidence of continuity sufficient to sustain a claim for RICO.

To prevail under RICO, plaintiffs must establish that the predicate acts were continuous. This can be done either by pleading closed-ended continuity or by pleading open-ended continuity. *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1526 (9th Cir. 1995). Closed-ended continuity may be shown with "a series of related predicates extending over a substantial period of time." *H.J., Inc.*, 492 U.S. at 242. Open-ended continuity may be shown by the "threat that criminal conduct will continue into the future." *Ibid.* "The fact that the last of a series of predicate acts may have completed the criminal scheme does not necessarily preclude a finding of continuity. As long as a threat of continuing activity exists *at some point* during the racketeering activity, the continuity requirement is satisfied." *Sun Savings and Loan Ass'n v. Dierdorff*, 825 F.2d 187, 194 n.5 (9th Cir. 1987).

3

1    Defendants contend that plaintiff has failed to establish either type of continuity. This
2 order need not address whether plaintiff can establish closed-ended continuity because plaintiff
3 has raised a sufficient dispute of fact as to open-ended continuity to preclude summary
4 judgment, as now discussed.

5    Defendants argue that the record conclusively demonstrates that the goal of the alleged
6 conspiracy had a solitary goal: to steal all business from Uthe Singapore or destroy it or force
7 its sale at a depressed price. Defendants also claim that the Singapore arbitration has already
8 established that this case involved only a single act, rather than a series of acts, but the appellate
9 order in this case forecloses any argument that Uthe is limited to the arbitration record. There
10 remains contrary evidence from which a jury could find that the conspiracy presented a threat of
11 continued criminal activity. Specifically, Katherine Yip, one of the co-conspirators, averred:

> Taking over Uthe Singapore was one step in the overall plan for Aetrium and the employees and officers of Uthe Singapore to profit by cutting Uthe USA out of the picture and preventing future payments to Uthe USA. In fact, we knew that it might not be possible to take over Uthe Singapore, if Uthe USA and Mr. Goodson could not be convinced to sell it. That is why we set up a secret shell corporation in 1992 — to divert Uthe Singapore orders to and continue the business of distributing products to the Uthe Singapore customers in the event that Uthe Singapore remained under the control of Uthe USA. Taking over Uthe Singapore was never the end goal of the conspiracy, it was simply a step in the plan to profit by keeping all of the business and profits from the company for ourselves.

19    Defendants cite several decisions for the position that multiple predicate acts that were
20 merely "a series of steps that were part of a single plan" cannot establish open-ended continuity,
21 but defendants' citations are inapposite. In *Aviva USA Corp. v. Vazirani*, 13-16858, 2015 WL
22 7888718, at *1 (9th Cir. Dec. 4, 2015), our court of appeals held that the defendants' extortion
23 scheme, which included a series of threatening emails and publication of negative information
24 about the target company could not establish a "pattern" under RICO, because the conduct was
25 uniformly directed at a single plan — exposing the target's allegedly unfair practice of using a
26 conspirator's trademark on a website critical of the conspirator's own business practices.
27 Similarly, in *GSI Technology v. United Memories, Inc.*, No. 13-01081, 2014 WL 1572358 (N.D.

4

Cal. Apr. 18, 2014) (Judge Paul S. Grewal), the alleged series of predicate acts of mail and wire fraud all operated with a single goal — the acquisition of a contract to design a memory chip.

Here, our plaintiff offered evidence that, at least at its inception, the alleged conspiracy intended to siphon off sales from Uthe Singapore indefinitely into the future. The scheme was so effective that plaintiff sold Uthe Singapore at a discount after a matter of months, but there remains evidence that this conspiracy posed a threat of repeated efforts to divert business from Uthe Singapore to the secret shell corporation and to withhold commissions due to Uthe Singapore from Aetrium's sales. Possibly, under Rule 50, the Court will see it differently with the benefit of a full trial record. For now, defendants are not entitled to summary judgment.[*]

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

Dated:   April 12, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[*] Uthe also contends that the Singapore defendants fabricated evidence in the Singapore arbitration in 1997, which it contends extended the time frame of any closed-ended conspiracy five years beyond the sale of Uthe Singapore. This, Uthe contends, is sufficient to satisfy the "'flexible concept' of what constitutes a substantial period of time" under closed-ended continuity. *See Mexicanos v. Hewlett-Packard Co.*, No. 14-05292, 2015 WL 9592606, at *11 (N.D. Cal. July 13, 2015) (Judge Beth Labson Freeman) (citing *Allwaste*, 65 F.3d at 1528). Defendants respond that there is no evidence linking them to the alleged fabrication.

The parties submitted supplemental briefing on this issue. This order need not address whether Uthe has proffered any evidence that a closed-ended conspiracy continued throughout the Singapore arbitration. The deposition of Katherine Yip raises a genuine dispute of fact as to whether defendants participated in an open-ended conspiracy.