IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UTHE TECHNOLOGY CORP, <br><br> Plaintiff, <br><br> v. <br><br> HARRY ALLEN and AETRIUM, INC., <br><br> Defendants. | No. C 95-02377 WHA <br><br> **ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS** |

**INTRODUCTION**

In this action alleging a RICO conspiracy to siphon business from a foreign distributor of semiconductor equipment, defendants move for summary judgment following a recent decision by the United States Supreme Court. To the extent stated below, defendants' motion is **GRANTED**.

**STATEMENT**

Plaintiff Uthe Technology Corporation, a manufacturer and distributor of semiconductor equipment, claims that defendants Aetrium, Inc., another manufacturer of semiconductor equipment, and its former officer in charge of Asian sales Harry Allen participated in a conspiracy to divert business away from our plaintiff's wholly-owned subsidiary, Uthe Technology (Singapore) Private, Ltd. Uthe Singapore was the Asian distributor of products manufactured by our plaintiff among others, including defendant Aetrium.

Uthe alleges that Aetrium, Allen, and several officers of Uthe Singapore conspired to withhold commissions from Uthe Singapore and diverted its business to a secret shell

corporation, ultimately resulting in the sale of Uthe Singapore at a depressed price at a sale that was negotiated and consummated in Singapore.

This matter was originally filed against the above-named defendants and the officers of Uthe Singapore in state court in 1993. It was subsequently removed here on federal question and diversity grounds. The Singapore defendants moved to dismiss the action as to them because the agreement governing their acquisition of Uthe Singapore, which governed plaintiff's claims against them required the parties to arbitrate any claims relating to the sale in Singapore. The remaining defendants — Aetrium and Allen — moved to stay the case pending resolution of the arbitration in Singapore. Judge James Ware, then the assigned judge, granted both motions.

After nineteen years of arbitration in Singapore, plaintiff obtained an award in excess of nine million U.S. dollars, which represented the difference between the true value of the shares in Uthe Singapore absent defendants' conduct versus the artificially depressed stock price actually received for them.

In May 2012, the action was reassigned to the undersigned judge, who lifted the stay and allowed a second amended complaint. Defendants moved for summary judgment arguing that Uthe could not establish that it suffered an injury in fact sufficient to confer standing, which motion was denied. Defendants again moved for summary judgment, arguing, *inter alia*, that Uthe was not entitled to treble damages under the Racketeer Influenced and Corrupt Organizations Act, inasmuch as the Singapore arbitration award had already been paid in full, and plaintiff could not seek damages for a claim that had already been paid in full. That motion was granted and judgment was entered for defendants.

The court of appeals reversed, holding that plaintiff was "not barred by the one satisfaction rule from pursuing treble damages under RICO against the Defendants, provided there is an offset paid to Uthe by the Foreign Defendants as a result of the arbitral award." *Uthe Technology Corp. v. Aetrium, Inc.*, 808 F.3d 755 (9th Cir. 2015).

Upon remand, defendants moved for summary judgment a third time, arguing that Uthe had failed to allege continuity as required to state a claim under RICO. An order denied

defendants' third motion for summary judgment. The same day, the parties were ordered to show cause why the case should not be stayed pending the Supreme Court's decision in *RJR Nabisco, Inc. v. The European Community*, No. 15-138 (U.S.). The parties stipulated to a stay.

After the Supreme Court decided *RJR Nabisco*, an order lifted the stay and set a schedule for the instant motion. This order follows full briefing, oral argument, and supplemental briefing.

**ANALYSIS**

The Racketeering Influenced and Corrupt Organizations Act creates a private right of action for a person "injured in his business or property" through a violation of the Act. That private right of action includes a remedy for treble damages.

In *Sparling v. Hoffman Construction Co., Inc.*, F.3d 635, 640 (9th Cir. 1988), our court of appeals held that if the harm giving rise to a RICO claim is "derivative of the harm to the corporation," rather than an individual harm, "the shareholder has no standing to assert the RICO claim." That is, a shareholder cannot bring a RICO action where "the wrong alleged is a fraud on the corporation."

In *RJR Nabisco*, the Supreme Court held that the presumption against extraterritoriality applied to civil RICO claims, holding that the law "requires a civil RICO plaintiff to allege and prove a domestic injury to business or property and does not allow recovery for foreign injuries." *RJR Nabisco, Inc. v. European Community*, 569 U.S. ___, 136 S. Ct. 2090, 2111 (2016).

At all material times, Uthe has been in the United States, but the business in question, its wholly-owned subsidiary, was in Singapore.

All agree that Uthe's sole remaining alleged injury — and indeed the only *domestic* injury — is the diminution in the value of Uthe's one hundred percent stake in Uthe Singapore, and the loss incurred due to the sale of that stake. Defendants contend that injury is derivative of the alleged injury to Uthe Singapore caused by the conspiracy.

Uthe cites *Northstar Financial Advisors Inc. v. Schwab Investments*, 779 F.3d 1036, 1060 (9th Cir. 2015), and *Eagle v. American Telephone & Telegraph Co.*, 769 F.2d 541, 546

1   (9th Cir. 1985), for the proposition that a shareholder or former shareholder may bring a direct
2   action where a derivative action would fail to compensate the shareholder, but those citations
3   are inapposite.

4   In *Northstar*, shareholders in a mutual fund sought to bring a direct action against the
5   trustees for breach of fiduciary duties arising out of alleged deviations from the investment
6   policies of the fund. Those defendants contended the claims were derivative claims belonging
7   to the fund, not direct claims that could be brought directly by the shareholders. Our court of
8   appeals rejected that argument, holding that the alleged deviation from the fund investment
9   policies directly impacted the shareholders. By contrast, that decision noted that where a trustee
10  "embezzles assets held by the fund, the injury may be first to the mutual fund and only
11  secondarily to the investors in the fund." *Northstar*, 779 F.3d at 1058.

12  That decision further acknowledged that a mutual fund differed from a publicly held
13  corporation, inasmuch as the latter "engages in a business, *e.g.*, the buying and selling of
14  widgets, in which the accretion of share price is generally the byproduct of business success,
15  and the depletion of share price can be the by-product of either unsuccessful business decisions
16  or misconduct by fiduciaries." *Ibid.* Nevertheless, the decision acknowledged that in
17  circumstances involving the "structural relationship of the shareholder to the corporation,"
18  shareholders in a publicly traded company may bring a direct action where recovery by the
19  corporation would not provide adequate relief to the shareholder. That is, recovery "would
20  simply increase the net asset value of the [mutual fund] at the time any damages were
21  recovered," so former shareholders could not recover, inasmuch as they had already sold their
22  shares (thereby forfeiting their standing to bring a derivative action).

23  In *Eagle*, 769 F.2d at 545, former minority shareholders in a corporation brought claims
24  against the majority shareholder for allegedly using its control of the corporation to implement
25  imprudent tax policies that depleted the assets of the corporation. Our court of appeals
26  acknowledged that normally a shareholder could not bring a direct action against a majority
27  shareholder arising from the depletion of corporate assets. That injury constituted direct injury
28  to the corporation. A subsequent merger with the majority shareholder, however, deprived the

4

1 former minority shareholders of any stake in the corporation and their ability to bring a
2 derivative suit.  Our court of appeals held that because recovery by the corporation could not
3 compensate the former minority shareholders for the loss in value of their shares, they could
4 bring a direct action.

5       Uthe's authorities addressed the distinction between direct and derivative actions.  They
6 did *not* concern the distinction between direct and derivative *injuries*, which is the relevant
7 inquiry here.  Indeed, *Eagle* expressly stated that allowing the claim to proceed "does not
8 change the nature or source of the shareholders' claim, which is rooted in an injury to the assets
9 of the corporation.  The effect on the shareholders' stock value was indirect — a mere reflection
10 of the alleged loss of corporate assets."  *Id.* at 547.[*]

11       The claims herein flowed only from a foreign conspiracy to siphon business from Uthe
12 Singapore into a shell corporation.  That siphoning occurred a third of the way around the globe
13 from our shore.  No injury occurred in the United States.  The conspiracy did not involve any
14 misconduct that interfered with the "structural relationship of the shareholder to the
15 corporation."  *See Northstar*, 779 F.3d at 1058.  Uthe, as the sole shareholder, had the
16 opportunity to throw out the subsidiary's corrupt management (indeed, many employees had
17 already left Uthe Singapore in connection with the conspiracy) and to cause the subsidiary to
18 sue them in Singapore.  Uthe spurned that opportunity and instead pursued a different remedy
19 — selling out to the conspirators and then suing them in Singapore.  Nevertheless, this was not
20 a case in which all chance of remedy had vanished, such that a direct action was required to
21 provide a remedy.  Thus, to the extent *Northstar* or *Eagle* have any relevance in the context of
22 civil RICO, they do not apply to these facts.

23       Uthe attempts to escape its failure to assert a direct injury by recasting its injury as
24 deriving from "theft of a corporation."  It cites *In re Activision Blizzard, Inc. Stockholder*
25 *Litigation*, 124 A.3d 1025, 1043 (Del. Ch. 2015), for the proposition that a claim arising from

---

[*] Uthe also cites *Arkansas Teacher Retirement System v. Countrywide Financial Corp.*, 75 A.3d 888, 897 (Del. 2013), for the proposition that a former shareholder may bring a direct action if it was fraudulently deprived of its shares.  *Arkansas Teacher* did not involve RICO, and the exception set forth therein addressed the limited circumstance of fraud directed at depriving the shareholders of the ability to bring a derivative action.

5

the purchase or sale of shares remains a personal claim — "[t]he underlying property could just as easily be land or a car." But the racketeering conduct alleged herein was not fraud on Uthe in connection with the sale of Uthe Singapore; it was the surreptitious depletion of the assets *of* Uthe Singapore, which, in turn, caused the depressed valuation of Uthe's shareholder interest. Uthe's injury plainly derived from the injury to its former subsidiary and so cannot form the basis of a civil RICO action.

Thus, this order holds that Uthe's sole remaining domestic injury is not cognizable as a claim under civil RICO. Accordingly, this order **GRANTS** defendants' motion for summary judgment.

## CONCLUSION

To the extent stated above, defendants' motion for summary judgment is **GRANTED**. A judgment will follow.

**IT IS SO ORDERED.**

Dated: August 26, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE